FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 8 - 2017 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

ZAKKIYAH R. DANIELS,

      Plaintiff,

-against-

KATHERINE M. KOSTREVA,

      Defendant.

-------------------------------------------------------------------- X

15-CV-3141 (ARR) (LB)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

OPINION & ORDER

ROSS, United States District Judge:

On June 1, 2015, plaintiff Zakkiyah R. Daniels commenced this defamation diversity action against defendant Katherine Kostreva. Compl., ECF No. 1. Despite proper service, defendant has failed to answer or otherwise respond to the Complaint. This court received a report and recommendation ("R. & R.") from the Honorable Lois Bloom, United States Magistrate Judge, addressing plaintiff's motion for default judgment, on January 12, 2017. R. & R., ECF No. 27. Defendant, pro se, timely filed objections on January 26, 2017. Def.'s Obj. R. & R. ("Def.'s Obj."), ECF No. 28. Specifically, defendant argues that Judge Bloom incorrectly determined that the alleged defamatory statements are actionable statements of fact, rather than opinion. Id. at 1. Defendant requests that the motion for default judgment be denied or, in the alternative, a hearing be held regarding the truth or falsity of any statements of fact.[1] Id. Defendant also requests an extension of time to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Id. After de novo review, I conclude that the statements at issue are statements of fact or mixed opinion-fact statements actionable under New York law. I deny defendant's

---

[1] As explained below, I construe this request as a motion to set aside the entry of default.

request for a hearing and her motion for an extension of time to answer the complaint. Finally, after reviewing the portions of the R. & R. to which no party objected, I find no clear error. The R. & R. is thus adopted as the decision of the court.

## BACKGROUND

### A. Factual Background

On February 1, 2014, plaintiff signed a six-month sublease to rent a room in defendant's apartment in Astoria, Queens. Compl. ¶ 32. Plaintiff paid defendant one month's rent as a security deposit. Id. ¶ 33. In May 2014, plaintiff's bank account and debit card were compromised. Id. ¶ 38. Finding herself unable to pay rent, she moved out of defendant's apartment without notifying defendant. Id. ¶ 39. Plaintiff forfeited her security deposit to cover rent for June 2014, but owed defendant the amount of one month's rent. Id.

On June 4, 2014, defendant anonymously purchased the domain name www.zakkiyahdaniels.com and built a website dedicated to disparaging plaintiff personally and professionally. Id. ¶ 9. The following statements appear on the website:

Zakkiyah Daniels is a FRAUD.

I am the reason law abiding immigrants have a bad reputation. Operating in the [obstructed] on a work Visa, I am not to be trusted. I have bailed on rent and utilities, [obstructed]eeding $1,300 without notice, despite signing a legal contract. I do not have a [ obstructed]warding address. I do not reply to phone calls. I have a history of winning money [obstructed]m incubators, but nothing to show forth. I have been served a court order at my [obstructed] known address in Harlem, but I am no longer residing in NYC. I am believed to [obstructed] in Coral Gables, FL. My startup is called Stylecrook Crook. How fitting. I barely [obstructed] on the internet, and claim to a have law degree from BPP Law School in the UK [obstructed] if I were a lawyer, my actions do not demonstrate any sworn oath I may have [obstructed]en. Too many honest person work hard to be here. I am not one of them. I [obstructed]long in jail. BEWARE. I will take your money and run. I will continue to abuse my [obstructed]y here in the U.S. I

have even spoken of plans to marry in order to get my green card. If you know where I am, please contact.

Zakkiyah Daniels is on the run.

STYLE "CROOK" IS MY BUSINESS AND I'M IN THE BUSINESS OF STEALING.

MY NAME IS ZAKKIYAH RENA DANIELS DO YOU KNOW WHERE I AM?

THE FRAUD

Zakkiyah Daniels, operates in the US as a [obstructed] immigrant with a work Visa from the UK [obstructed] Bermuda. Despite signing a contract [obstructed] departed without notice from her [obstructed] recent residence in Astoria, New York, without paying past due rent, utilities and internet. In addition to theft of service, Zakkiyah let it be known that she was considering a sham marriage to become a US Citizen. #GoBackWhereYouCameFrom. Zakkiyah Daniels claims she received her law degree from BPP Law School. If she did, then she would know that the BPP Code of Business Ethics states, "We conduct ourselves with honesty, integrity and the highest ethics standards. We abide by and comply with the laws, regulations, and rules that govern us wherever we operate in the world." A bar and a thief do not a lawyer make. #GaveMySoulToTheDevilInBermuda

Screenshots, Compl. Ex. A., at *33-37. Defendant also published a copy of plaintiff's passport, revealing her name, passport number and other identifying information, with the word "FRAUD" superimposed on the photograph. See id.; Compl. ¶ 11.

To disseminate this content, defendant created a social media account using plaintiff's name. Compl. ¶ 10. Posing as plaintiff, she invited plaintiff's personal and business contacts by email to visit the website. Id. It is not clear how defendant obtained contact information for plaintiff's friends and colleagues.

B. Procedural History

On June 1, 2015, plaintiff Zakkiyah R. Daniels commenced this defamation diversity action against defendant Katherine Kostreva. Compl. The summons was returned executed

noting that defendant was served on June 23, 2015. Affirmation of Service, ECF No. 5. On August 13, 2015, defendant requested an extension of time to respond to plaintiff's complaint in order to find an attorney. Mot. Extension Time, ECF No. 6. Defendant also requested that a copy of the complaint be mailed to her in Florida. Id. The court granted defendant's request and ordered her to respond to plaintiff's complaint by September 30, 2015. Order (Aug. 17, 2015), ECF No. 8. The Clerk sent a copy of this order to defendant at the Florida address she provided.

Defendant did not respond to plaintiff's complaint by the court-ordered deadline. Plaintiff requested entry of default against defendant on November 3, 2015. Request Cert. Default, ECF No. 10. On January 11, 2016, the Clerk of Court entered a default against defendant. Entry of Default, ECF No. 13. Thereafter, on April 1, 2016, plaintiff moved for default judgment. Mot. for Default J., ECF No. 14. This motion was referred to Judge Bloom on April 5, 2016. Order Referring Mot., ECF No. 15.

Judge Bloom scheduled a damages inquest for September 22, 2016. Order (July 26, 2016), ECF No. 16. A copy of the order scheduling this inquest was sent to defendant at the Florida address she provided. Almost two months later, and only three days before the scheduled inquest, defendant wrote to the court to request that the inquest be adjourned on the basis that defendant had not been properly served. Mot. Adjourn Conf., ECF No. 19. As defendant had received actual notice of the inquest almost two months prior, the court denied defendant's request, and ordered that defendant appear at the September 22, 2016 inquest and to show good cause under Fed. R. Civ. P. 55(c) why the entry of default should be set aside. Order (Sept. 20, 2016), ECF No. 20.

4

On the eve of the inquest, defendant faxed a second request for adjournment to the court, stating that she was in California caring for her fiancé who was scheduled to have surgery. Mot. Adjourn Conf., ECF No. 22. Defendant also requested that all future correspondence be mailed to a restaurant in Brooklyn, New York. Id. Judge Bloom denied defendant's request for an adjournment. Order (Sept. 23, 2016), ECF No. 23.

On November 9, 2016, defendant requested that this case be stayed "pending resolution of the criminal case against Plaintiff." Letter Mot. (Nov. 9, 2016), ECF No. 25. The court denied this motion because "there is no criminal case pending against plaintiff." See R. & R. at 8; Order (Sept. 30, 2016), ECF No. 26. A copy of this order was mailed to the Brooklyn restaurant pursuant to defendant's instructions.

The court received the R. & R. addressing plaintiff's motion for default judgment on January 12, 2017. R. & R. Defendant timely filed objections on January 26, 2017. Def.'s Obj.

## DISCUSSION

A district court reviews "de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). For those portions of the R. & R. to which no objections have been made, a district court uses a "clear error" standard of review. See Brissett v. Manhattan & Bronx Surface Transit Operating Auth., No. 09-CV-874 (CBA) (LB), 2011 WL 1930682, at *1 (E.D.N.Y. May 19, 2011) (citing Lewis v. Zon, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008)).

## A. Defendant's Statements are Actionable Statements of Fact

Defendant timely objected to the finding in the R. & R. that "the majority of the[] statements [from the website] are actionable statements of fact." R. & R. at 13. I review de novo this finding.

"[O]nly a provable statement of fact is actionable as defamation." Brahms v. Carter, 33 F. Supp. 3d 192, 198 (E.D.N.Y. 2014) (citing McNamee v. Clemens, 762 F. Supp. 2d 584, 600 (E.D.N.Y. 2011)).[2] While "[i]t is axiomatic that statements of opinion cannot constitute actionable defamation," id. (citing Egiazaryan v. Zalmayev, 880 F. Supp. 2d 494, 503 (S.D.N.Y. 2012)), "[an] exception to this general rule is mixed opinion-fact defamation," Sorvillo v. St. Francis Preparatory Sch., 607 F. App'x 22, 24 (2d Cir. 2015). Mixed opinion-fact defamation occurs when a defendant "makes otherwise non-actionable statements of opinion, but where 'the statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it.'" Id. (quoting Steinhilber v. Alphonse, 501 N.E.2d 550, 552-53 (N.Y. 1986)). However, "'[l]oose, figurative or hyperbolic statements, even if deprecating the plaintiff' [cannot] be the subject of a defamation action." Brahms, 33 F. Supp. 3d at 198 (quoting Dillon v. City of New York, 704 N.Y.S.2d 1, 5 (N.Y. App. Div. 1999)). "[T]he meaning reasonably attributable or attribute[ed] to the intended reader . . . controls." Celle v. Filipino Reporter Enters., Inc., 209 F.3d 163, 177-78 (2d Cir. 2000).

Whether a statement is "opinion" or "fact" depends on the following factors:

(1) an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous;

---

[2] As Judge Bloom explains, New York law applies to plaintiff's action. See R. & R. at 9-10. Defendant does not object to this finding.

6

> (2) a determination of whether the statement is capable of being objectively characterized as true or false;
>
> (3) an examination of the full context of the communication in which the statement appears; and
>
> (4) a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might "signal to readers or listeners that what is being read or heard is likely to be opinion, not fact."

Kirch v. Liberty Media Corp., 449 F.3d 388, 403 n.7 (2d Cir. 2006) (quoting Steinhilber v. Alphonse, 501 N.E.2d 550, 554 (N.Y. 1986)). When applying these factors, "context is key." Brahms, 33 F. Supp. 3d at 198.

Defendant argues that the context makes clear that the statements are "opinion, rhetoric, argument, and bombast." Def.'s Obj. at 2. Specifically, defendant points to the use of "hashtags interspersed throughout the text," "rhetorical questions[,] and obvious hyperbole" as "indicat[ive of the] gossipy, superficial nature" of the communication. Id. at 3. I find her arguments unpersuasive.

While it is true that "readers give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts," Brahms, 33 F. Supp. 3d at 199 (quoting Sandals Resorts Int'l Ltd. v. Google, Inc., 925 N.Y.S.2d 407, 416 (N.Y. App. Div. 2006)), this is not a typical Internet defamation case. Most cases addressing alleged defamation based on statements published on the Internet concern statements in website's comment section, public message board or chatroom. See, e.g. id. ("The allegedly defamatory statement in this case was made on an internet forum where people typically solicit and express opinions, generally using pseudonyms."); Verasci v. Richie, 815 N.Y.S.2d 350, 351 (N.Y. App. Div. 2006) (addressing statement "on an Internet public message board"). Website comments,

message board and chatrooms are well-known Internet fora, characterized by disclaimers that the posts of users represent their opinions, participation by numerous members of the public, back-and-forth exchanges that can be vitriolic, grammatical and spelling errors, and anonymous postings. This context is what alerts readers to give less credence to statements made in such Internet fora. See Sandals Resorts, 925 N.Y.S.2d at 415-16; Versaci, 815 N.Y.S.2d at 351.

The statements at issue here did not arise in such a context. Here, defendant created a website containing only information about plaintiff, devoid of any context, and distributed it by impersonating plaintiff in a social media network. Defendant admits this. See Def.'s Obj. at 3 (The statements were "published on a meager website with minimal content, no advertisements, and only a few paragraphs of text in total."). One New York appeals court, addressing allegedly defamatory statements in an e-mail found that "[t]he observation that readers give less credence to allegedly defamatory remarks published on the Internet . . . is equally valid for . . . widely distributed e-mail commentary." Sandals Resorts, 925 N.Y.S.2d at 416. However, the court noted that its decision "is in no way intended to immunize e-mails the focus and purpose of which are to disseminate injurious falsehoods about their subjects." Id.

Defendant's website falls squarely in this latter category, as "the focus and purpose of [it was] to disseminate injurious falsehoods about [plaintiff]." Id. Defendant did not post exaggerated falsehoods about plaintiff in response to a heated debate on a message board. Rather, she created a website for the sole purpose of casting doubt on plaintiff's professional and personal integrity and widely disseminated it. Thus, after examining the context of the website in which the statements appear, I find that this context does not suggest to the typical reader that the statements are "the writer's expression of her personal opinion of Ms. Daniels," Def.'s Obj.

at 3, that should not be understood as factual statements, see Brahms, 33 F. Supp. 3d at 198 ("The dispositive inquiry is whether a reasonable reader could have concluded that the statements were conveying facts about the plaintiff." (citing Gross v. N.Y. Times Co., 623 N.E.2d 1163, 1167 (N.Y. 1993))).

I find that a majority of defendant's statements are factual; they "ha[ve] a precise meaning which is readily understood" and "[are] capable of being objectively characterized as true or false." Kirch, 449 F.3d at 403 n.7. For example, defendant asserted that plaintiff "ha[s] a history of winning money . . . [in] incubators, but nothing to show [for it]," and that she "ha[s] even spoken of plans to marry in order to get [a] green card." Screenshots, Compl. Ex. A., at *35. Most of the remaining statements are mixed opinion-fact, such as her claim that plaintiff is "not to be trusted," or "claims she received her law degree from BPP Law School." Id.

In sum, after de novo review, I conclude that the statements at issue are actionable statements under New York defamation law. I therefore adopt this portion of the R. & R. as the opinion of the court.

### B. Defendant's Motion to Set Aside the Entry of Default is Denied

Defendant requests a hearing be held to determine if the statements of fact on the website are true. Def.'s Obj. at 4. Because the court "liberally construe[s] pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest," Angulo v. Nassau Cty., 89 F. Supp. 3d 541, 548 (E.D.N.Y. 2015) (quoting Bertin v.

United States, 478 F.3d 489, 491 (2d Cir.2007)), I construe defendant's request as a motion to set aside the entry of default under Fed. R. Civ. P. 55(c).[3]

"[A] defendant may move to set aside an entry of default pursuant to Rule 55(c) for 'good cause.'" Sibley v. Choice Hotels Int'l, Inc., 304 F.R.D. 125, 130 (E.D.N.Y. 2015) (quoting Fed. R. Civ. P. 55(c)). Because "concerns regarding the protection of a litigant's rights are heightened when the party held in default appears pro se[,] . . . as a general rule, a district court should . . . grant leave to set aside the entry of default freely when the defaulting party is appearing pro se." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993); see also Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) ("The court's duty is even broader in the case of a pro se defendant who finds herself in court against her will with little time to learn the intricacies of civil procedure.").

However, litigants are not entitled to overturn a default judgment simply by virtue of being pro se. "[P]ro se litigants are . . . required to make a good faith effort to comply with [the] Federal Rules . . . . At the very least, [pro se] defendants are required to notify the Court as to whether they intend to defend the action in any manner." S.E.C. v. U.N. Dollars Corp., No. 01 Civ. 9059(AGS), 2003 WL 192181, at *1 (S.D.N.Y. Jan. 28, 2003). District courts in this circuit have entered default judgments against pro se defendants who failed to respond to the complaint for over a year based on a mistaken belief that only a qualified attorney could answer the complaint, see id., and made no "serious effort to comply with the Court's directions," including

---

[3] The analysis would not change were I instead to construe this argument as an opposition to entry of default. The Second Circuit applies the same analysis to oppositions to an entry of default as to motions to set aside a default. Am. Stevedoring, Inc. v. Banana Distribs., Inc., No. 98 Civ. 5782(BSJ), 1999 WL 731425, at *2 (S.D.N.Y. Sept. 20, 1999).

by failing to appear at court proceedings, see Wilen v. Alt. Media Net, Inc., No. 03CIV2524(RMB)(JCF), 2005 WL 167589, at *3 (S.D.N.Y. Jan. 26, 2005). See also S.E.C. v. Setteducate, 419 F. App'x 23 (2d Cir. 2011) (upholding entry of default judgment as sanction against pro se litigant).

"In determining whether good cause exists for relieving a party from a finding of default, courts consider '[1] the willfulness of the default, [2] the existence of a meritorious defense, and [3] the level of prejudice that the non-defaulting party may suffer should relief be granted.'" Sibley, 304 F.R.D. at 130 (quoting Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 171 (2d Cir.2001)). However, because "'courts have an interest in expediting litigation, and abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct,'" "[a]n absence of prejudice to the nondefaulting party would not in itself entitle the defaulting party to relief from the judgment." S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998) (alterations omitted) (quoting Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996)). Each of the three factors for assessing whether defendant has shown good cause for setting aside the entry of default are discussed, in turn, below.

1. **Willfulness**

First, the court finds that defendant's default was willful. The Second Circuit "ha[s] interpreted 'willfulness,' in the context of a default, to refer to conduct that is more than merely negligent or careless[,] . . . [such as] where the conduct of . . . the litigant was egregious and was not satisfactorily explained." Id. (citations omitted). Further, "[g]ross negligence can weigh against the party seeking relief from a default judgment." Am. Alliance, 92 F.3d at 61. "Courts have held a default to be willful when a defendant knew about the complaint and failed to

respond . . . [or] where the defendant fail[ed] to comply with the court's orders." S.E.C. v. Alexander, No. 00CIV7290LTSHBP, 2004 WL 1468528, at *5 (S.D.N.Y. June 28, 2004) (quoting Gumbs & Thomas Pubs., Inc. v. Lushena Books, No. 99 CV 3608(ILG), 2003 WL 21056983, at *2 (E.D.N.Y. Mar. 3, 2003)).

Kostreva has not "made a good faith effort to adhere to the rules of the court and to protect [her] rights." Enron, 10 F.3d at 98. Defendant has known about the complaint since at least August 13, 2015, when she filed a motion for an extension of time to respond. Mot. Extension Time, ECF No. 6. After her extension was granted, defendant failed to communicate with the court for over a year, until her September 19, 2016 request for an adjournment three days before the damages inquest. See Mot. Adjourn Conf., ECF No. 19. When the court denied that request, defendant nevertheless failed to appear at the inquest. Instead, on the eve of the inquest, defendant faxed a second request for an adjournment, giving a transparently false excuse – that her fiancé was scheduled to have surgery in California, a development which defendant failed to mention in her initial adjournment request made two days earlier. See R. & R. at 7-8. Defendant's next communication with the court came two months later, when she requested the case be stayed "pending resolution of the criminal case against plaintiff." Letter Mot. (Nov. 9, 2016), ECF No. 25. This motion was denied. Order (Nov. 30, 2016), ECF No. 26. While defendant once again alleges a criminal case against plaintiff in her objections to the R. & R., see Def.'s Obj. at 5, in fact there is no evidence of a criminal case pending against plaintiff, see R. & R. at 8.[4] Furthermore, defendant has failed to provide her current address to the court. She first

---

[4] In her objections, defendant cites an alleged "complaint report," see Def.'s Obj. at 5, but does not provide a copy of this report or any other evidence to suggest that plaintiff is under investigation by the police. The cited complaint is likely one defendant filed against plaintiff as

12

requested that her mail be sent to Florida, see Mot. Extension Time, ECF No. 6, then asserted that she was in California but provided the court no contact information there and requested that mail be sent to a restaurant in Brooklyn, "in care of" another individual, see Mot. Adjourn Conf., ECF No. 22. Her objections to the R. & R. do not list a return address. Def.'s Obj.

While defendant's pro se status weighs against entry of default, it is not an absolute bar. See, e.g., Setteducate, 419 F. App'x at 24. Defendant has repeatedly failed to comply with court orders. She has repeatedly submitted information to the court that is at best unsubstantiated claims and at worst deliberate falsehoods. This pattern of manipulating the court extends to her instant request for a trial on the merits. Judge Bloom has more than extended herself to accommodate this pro se defendant. Given defendant's complete disregard for the procedures and orders of this court, I find her default was willful.

### 2. Defense

Second, defendant has not presented a meritorious defense. "In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, but he must present evidence of facts that, 'if proven at trial, would constitute a complete defense.'" McNulty, 137 F.3d at 740 (citing Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983) and quoting Diakuhara, 10 F.3d at 98). Liberally construing her objections to the R. & R., defendant alleges that the statements made on the website were true. Def.'s Obj. at 4. "It is well established that truth is an absolute defense to

---

part of her unsuccessful effort to enlist law enforcement to prosecute plaintiff for offenses defendant alleges against her. See R. & R. at 8.

13

defamation." McCusker v. Hibu PLC, 159 F. Supp. 3d 341, 350 (E.D.N.Y. 2016) (quoting Fanelle v. LoJack Corp., 79 F. Supp. 2d 558, 562 (E.D. Pa. 2000)).

However, defendant presents no "evidence of facts" to support this defense. McNulty, 137 F.3d at 740; see also State Farm Mut. Auto. Ins. Co. v. Cohan, 09-CV-2990, 2010 WL 890975, at *4 (E.D.N.Y. Mar. 8, 2010) ("[S]imply saying 'I didn't do it,' is not a meritorious defense." (citing S.E.C. v. Breed, 01Civ7798(CSH), 2004 WL 1824358, at *12 (S.D.N.Y. Aug. 13, 2004))). Indeed, defendant does not even claim in her objections that the statements were true. See Def.'s Obj. at 4 ("The website statements cannot 'provide a basis for liability' as defamation if those statements are true." (emphasis added) (quoting Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997))). Further, the court can imagine no facts defendant could present that would show to be true many of the defamatory statements defendant made. Defendant could not, for example, substantiate her claim that plaintiff is a "fraud," given that the parties knew each other for a short period of time and in a limited context. See Screenshots, Compl. Ex. A., at *34.

It is also notable, given the vindictive, intentional and malicious nature of defendant's conduct, that she does not contest the essential truth of the facts alleged in the complaint. See generally Def.'s Obj. In her various requests for relief from this court, defendant has never claimed that she did not create a website solely to disparage plaintiff and impersonate plaintiff in order to disseminate it. Given this conduct, even if defendant were able to present evidence

14

showing the truth of a subset of the statements she made on her website,[5] there would remain ample evidence to support Judge Bloom's well-reasoned award of actual and punitive damages.

Finally, even if defendant had presented evidence in support of her defense, I would not be obliged to consider it on this motion. A district court is not required to consider new evidence submitted in response to a R. & R., even where the objecting party is pro se. See Toliver v. N.Y.C. Dep't of Corr. Officer Okvist, No. 10CV5354DABJCF, 2015 WL 8543103, at *3 (S.D.N.Y. Dec. 10, 2015), appeal dismissed (May 25, 2016) ("[C]ourts generally do not allow pro se parties to litigate matters in their objections that were not presented to the magistrate judge." (citing Howell v. Port Chester Police Station, No. 09 Civ. 1651, 2010 WL 930981, at *1 (S.D.N.Y. Mar. 15, 2010) and Litchmore v. Williams, 11 CIV. 7546, 2013 WL 3975956, at *2 (S.D.N.Y. Aug. 5, 2013))).

### 3. Prejudice

Third, I am unable to make a determination regarding potential prejudice to plaintiff on the current record. While plaintiff has been unable to litigate this case for over eighteen months, delay alone cannot establish prejudice. See Musler, 713 F.2d at 916. However, I see no reason to request additional briefing on this point. Even if I assume no prejudice to plaintiff, the balance of factors favors denying defendant's motion to set aside the entry of default. See U.N. Dollars Corp., 2003 WL 192181, at *2 ("[A] lack of prejudice does not establish 'good cause' to set aside the entry of default when defendants' delay is willful and their defenses are without

---

[5] For example, defendant may be able to show that plaintiff did owe her $1,300. See Screenshots, Compl. Ex. A., at *35.

merit." (citing Commercial Bank of Kuwait v. Rafidain Bank, 15 F.3d 238, 244 (2d Cir. 1994))).
Therefore, the motion is denied.

### C. Defendant's Motion for an Extension of Time is Denied

Defendant's motion for an extension of time to respond to the complaint, see Def.'s Obj. at 4-5, is denied for substantially the same reasons that I found her default to be willful. Defendant has had ample opportunity to respond to the complaint and declined to do so.

### D. The Remainder of the R. & R. is Adopted

Defendant has filed no objection to the remainder of the R. & R. I have reviewed the remainder of the R. & R. for clear error on the face of the record, and having so reviewed, found no clear error. I therefore adopt the remainder of the R. & R. as written.

## CONCLUSION

I hereby adopt the Report and Recommendation, in its entirety, as the opinion of the court pursuant to 28 U.S.C. § 636(b)(1). Therefore, plaintiff's motion for a default judgment is granted, and damages in the amount of $70,000 are awarded. The Clerk of Court is respectfully requested to enter judgment accordingly.

SO ORDERED.

/s/(ARR)

Allyne R. Ross
United States District Judge

Dated: February 7, 2017
      Brooklyn, New York